COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Bray
Argued at Richmond, Virginia

ROBERT HURT ROBERTSON, JR.

                                    MEMORANDUM OPINION* BY
v.          Record No. 1678-97-2      JUDGE LARRY G. ELDER
                                       DECEMBER 8, 1998
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                     Thomas V. Warren, Judge

            Robert E. Hawthorne, Jr. (Hawthorne &
            Hawthorne, on brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Robert Hurt Robertson (appellant) appeals from his bench

trial conviction for driving after having been declared a

habitual offender and in such a manner as to endanger the life,

limb, or property of another, in violation of Code § 46.2-357.

On appeal, he contends the trial court erroneously ruled (1) that

the delay in trying him did not violate his constitutional speedy

trial rights; (2) that granting the Commonwealth's mid-trial

continuance did not deprive him of a fair trial; and (3) that the

testimony of the Commonwealth's key witness was not so incredible

as to render the evidence insufficient as a matter of law to

support his conviction.  For the reasons that follow, we affirm

appellant's conviction.

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

I.

FACTS

A.  THE OFFENSE

At around midnight on October 4, 1995, Deputy Joe Alder pursued a vehicle after having received a complaint from Howard Roark that the vehicle was trespassing repeatedly on his property.  During the pursuit, Alder obtained the license number and learned that the vehicle, a pickup truck, was registered to appellant's father.  As Alder pursued the truck, it ran a stop sign and, despite rainy conditions, drove at speeds "well over 100 miles per hour," finally coming to rest off the road in the mud when the brakes locked up.  Alder saw a tall, slender white male exit the passenger side of the truck and a short male exit the driver's side.  He watched both men escape into the woods.  Alder could not identify either person.  Deputy Alder then went to appellant's nearby house.  Although the house was "wide open" and the lights and television were on, no one responded to Alder's knocking.

After refusing to testify and being held in contempt,[1] the Commonwealth's key witness, Michael Merchant, testified that he and appellant drove appellant's truck to Howard Roark's chicken

---

[1] These events are described more fully below.  The issues of the lawfulness and propriety of the manner in which Merchant's testimony ultimately was obtained are not before us.  Even assuming Merchant's rights were violated in one or more ways, matters upon which we express no opinion, appellant lacks standing to assert those issues.

house and that appellant was driving while Deputy Alder pursued them. Merchant also testified that, at the time of the offense, he was 6'1" tall and weighed 175 or 180 pounds. The Commonwealth asked the trial court to take judicial notice of the fact that appellant was "much shorter and much stockier" than Merchant. In finding appellant guilty, the trial court noted that Deputy Alder's testimony was "really undisputed" and that it was "clear to [the court] . . . that [Alder] saw [appellant] getting out of the driver seat."

### B.  PROCEEDINGS IN THE TRIAL COURT

Appellant was indicted on July 2, 1996, arrested, and released on bail. The Commonwealth's key witness, Michael Merchant, failed to appear for appellant's trial on October 17, 1996, and the Commonwealth requested a continuance. Counsel for appellant said he had no objection to "a joint motion for a continuance." Trial was reset for December 16, 1996, and Merchant again failed to appear.

Trial commenced on January 15, 1997, with Merchant present pursuant to a capias, and the court heard the testimony of Deputy Alder. When Merchant was called to testify, he equivocated about whether he would tell the truth and inquired about "plead[ing] the fifth." Eventually, Merchant took the oath to the trial court's satisfaction.

On the Commonwealth's motion, the trial court granted Merchant use immunity. When Merchant continued to resist

- 3 -

testifying, saying the concept "sound[ed] mighty fishy," the Commonwealth's attorney informed the court that Merchant was a probationer of the court and that, if he continued to be in contempt of court, the Commonwealth's attorney would request the issuance of a capias for his arrest on a probation violation. Merchant began to answer the Commonwealth's questions, but he claimed he did not really know appellant and had just "seen him around town." Merchant also claimed he had hit his head during an epileptic seizure and could not remember what, if anything, he told Deputy Alder about the events of October 4, 1995.

Appellant moved to dismiss, arguing that the Commonwealth could not convict him without Merchant's testimony and that because Merchant could not remember the events in question, holding Merchant in contempt would do nothing to improve his memory. The trial court denied the motion, found Merchant in contempt, and ordered Merchant held until the Commonwealth's request for revocation of his unrelated suspended sentence could be heard.

The Commonwealth called Officer Ed Gates, who testified that on one evening around October of 1995, he saw Merchant driving the pickup truck owned by appellant's father and that someone he "believe[d]" to be appellant was with Merchant.

The Commonwealth then moved for a continuance to allow Merchant an opportunity to purge himself of contempt. Appellant objected and again moved to dismiss on the ground that a

mid-trial continuance was prejudicial to him.  The trial court agreed that the continuance was "somewhat prejudicial" to appellant but that Merchant's "display [also] . . . [was] rare indeed" and necessitated granting the continuance.

When trial resumed on April 28, 1997, appellant moved to dismiss on constitutional speedy trial grounds, proffering that the original charge was brought in October 1995, was nolle prossed because of the refusal of witnesses to testify, and was re-initiated by direct indictment on July 2, 1996.  The trial court denied that motion.  Finally, appellant moved the trial court to reconsider its motion to dismiss based on the claimed abuse of discretion in continuing the case after trial had begun.  Again, the court denied that motion.

Following the denial of those motions, Michael Merchant appeared with counsel and testified without obvious resistance. He indicated that he had been driving earlier on the evening in question but that appellant was driving while Deputy Alder pursued them.  Merchant admitted being an epileptic and said that he took medication for that condition which made him prone to memory lapses "[w]henever [he] get[s] excited over something," such as during the high speed chase in question.  Merchant admitted that he was not authorized to drive the vehicle that night because his operator's license had been suspended.  He also admitted having had multiple prior driving convictions.

Appellant moved to strike at the close of the Commonwealth's

evidence on the ground that Merchant's testimony was incredible. The trial court denied the motion. Appellant renewed the motion during his closing argument, again challenging the credibility of Merchant's testimony and contending that, without Merchant's testimony, the Commonwealth's circumstantial evidence that appellant exited from the driver's side of the vehicle was insufficient to convict appellant.

The trial court found that the critical portions of Merchant's testimony were credible and, taken in conjunction with Deputy Alder's testimony, that the evidence was sufficient to prove the charged offense beyond a reasonable doubt.

## II.

## ANALYSIS

### A. CONSTITUTIONAL SPEEDY TRIAL RIGHTS

Appellant contends he was denied his constitutional right to a speedy trial. We disagree.

"The determination of whether an accused has been denied the constitutional right to a speedy trial requires 'a difficult and sensitive balancing process' in which the court examines on an ad hoc basis the conduct of both the state and the accused which led to a delay in prosecution.'" Kelley v. Commonwealth, 17 Va. App. 540, 544, 439 S.E.2d 616, 618 (1994) (quoting Barker v. Wingo, 407 U.S. 514, 530, 533, 92 S. Ct. 2182, 2192, 2194, 33 L. Ed. 2d 101 (1972)). In reviewing an alleged constitutional speedy trial violation, the Court must consider: (1) the length of the delay;

(2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to defendant. See Barker, 407 U.S. at 530, 92 S. Ct. at 2191.

<u>1.  Length of Delay</u>
The first of the <u>Barker</u> factors, the length of delay, is properly considered separately from the other three, for if the delay in bringing a defendant to trial is not sufficient to raise at least an inference of injustice, further exploration is unnecessary.  When the delay involved becomes "so protracted as to be 'presumptively prejudicial'", the first factor becomes a 'triggering mechanism' which necessitates 'inquiry into the other factors that go into the balance.'"  There is no bright line time limit that serves to automatically invoke a defendant's right to exploration of the other factors.  A defendant must be able to at least raise the presumption that, in his particular case and in his particular circumstances, the delay was so detrimental as to have endangered his right to a fair trial.

<u>Beachem v. Commonwealth</u>, 10 Va. App. 124, 131, 390 S.E.2d 517, 520 (1990) (quoting <u>Fowlkes v. Commonwealth</u>, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978) (quoting <u>Barker</u>, 407 U.S. at 530, 92 S. Ct. at 2192)).  "'[T]he Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused.'"  <u>Holliday v. Commonwealth</u>, 3 Va. App. 612, 617, 352 S.E.2d 362, 364 (1987) (quoting <u>United States v. MacDonald</u>, 456 U.S. 1, 6, 102 S. Ct. 1497, 1501, 71 L. Ed. 2d 696 (1982)).  "When the charge is for a misdemeanor or lesser offense, the length of delay that will be tolerated is less than that when the charge is for a more serious crime."  <u>Kelley</u>, 17 Va. App. at 545, 439 S.E.2d at 619.

The evidence in the record indicates that the offense occurred on October 4, 1995 and that appellant was arrested on

July 8, 1996, on an indictment issued for that offense on July 2, 1996. However, appellant proffered at trial that an indictment was first issued against him on this charge in October 1995 but was dismissed by nolle prosequi due to the refusal of a witness to testify. He contends that this period should be included in our constitutional speedy trial evaluation. We assume without deciding that we may rely on appellant's proffer, making the length of time between appellant's original indictment in October 1995, and the completion of his trial on April 28, 1997, a period of about nineteen months. We also assume, without deciding, that the date of the original indictment is the proper time to begin our constitutional speedy trial analysis.[2] The crime here is the felony of driving after having been declared a habitual offender and in such a manner as to endanger the life, limb or property of another in violation of Code § 46.2-357. It involved appellant's

---

[2]Ordinarily, "'[u]nder Virginia procedure, a nolle prosequi is a discontinuance which discharges the accused from liability on the indictment to which the nolle prosequi is entered.'" Arnold v. Commonwealth, 18 Va. App. 218, 221, 443 S.E.2d 183, 185 (quoting Miller v. Commonwealth, 217 Va. 929, 935, 234 S.E.2d 269, 273 (1977)), aff'd on reh'g en banc, 19 Va. App. 143, 450 S.E.2d 161 (1994). Based on this principle, we have held that when an original indictment is disposed of by nolle prosequi and a second indictment is issued, the time calculations of the speedy trial statute, Code § 19.2-243, are to be counted from the date of the second indictment. See 18 Va. App. at 221-22, 443 S.E.2d at 185. In the context of constitutional speedy trial rights, however, we have not expressly addressed this issue. In Arnold, we applied this principle in the context of the statutory speedy trial analysis but analyzed the constitutional speedy trial claim from the date of the original finding of probable cause. Id. at 220-24, 443 S.E.2d at 184-86. We do not address this issue in the case before us.

driving at speeds of "well over 100 miles per hour" in an attempt to evade a police officer. We consider this felony a more serious crime. Assuming without deciding that the delay of nineteen months was presumptively prejudicial, we evaluate the additional factors from Barker to determine whether appellant's constitutional speedy trial rights were violated.

## 2. Reason for the Delay

The Commonwealth bears the burden "'to show, first, what delay was attributable to the defendant and not to the Commonwealth and, second, what part of any delay attributable to the prosecution was justifiable.'" Holliday, 3 Va. App. at 617, 352 S.E.2d at 365 (quoting Fowlkes, 218 Va. at 767, 240 S.E.2d at 664). Here, after the second indictment in July 1996, appellant joined in the Commonwealth's continuance motion so that he would have sufficient time to prepare for trial. However, the record indicates that most significant delays were due to the failure of the Commonwealth's key witness to cooperate, despite the Commonwealth's earnest efforts to secure his attendance at trial. Therefore, in evaluating this factor, we attribute the majority of the delay to the Commonwealth, but we do not weigh it heavily because the Commonwealth was not at fault in the delay. See id. at 618, 352 S.E.2d at 365 (citing Barker, 407 U.S. at 531, 92 S. Ct. at 2192).

## 3. Assertion of the Right

Next, we consider whether appellant asserted his

constitutional speedy trial right.  He objected to the continuance of January 15 and asserted his constitutional speedy trial right on April 28, prior to the resumption of Merchant's testimony.  We hold, therefore, that he timely asserted this right.

### 4.  Prejudice

In evaluating prejudice, the Supreme Court has identified three interests to be protected:  "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired."  Kelley, 17 Va. App. at 546, 439 S.E.2d at 620 (citing Barker, 407 U.S. at 532, 92 S. Ct. at 2193).  None of these factors supports a finding of prejudice in this case.  First, appellant was not incarcerated prior to trial.  Second, he makes no claim that he suffered an abnormal degree of anxiety while awaiting trial.  See id. at 546-47, 439 S.E.2d at 620 (noting that "anyone who is subject to criminal prosecution will commonly suffer anxiety and concern about the outcome").  Third, although appellant asserts that the delay impaired his defense, we reject this contention.  Appellant had no right to rely on Merchant's claimed memory lapse.  See Arnold v. Commonwealth, 18 Va. App. 218, 224, 443 S.E.2d 183, 187 (rejecting claim that delay impaired defense because it permitted a previously unavailable witness to testify), aff'd on reh'g en banc, 19 Va. App. 143, 450 S.E.2d 161 (1994).  Finally, the passage of time did not

critically impair the ability of witnesses to remember key events in sufficient detail. "Even if the memories of the defendant's own witnesses are diminished, the effect of that loss on the defendant's case must be demonstrated before prejudice may be found." Kelley, 17 Va. App. at 547, 439 S.E.2d at 620. The record here does not support appellant's assertion that the witnesses admitted any difficulties in recollection. Merchant, the key witness, testified with certainty that appellant was driving during the high speed chase. Further, appellant made no allegation that any of the witnesses could have provided appellant with an alibi if their memories had been more precise.

Evaluating the four Barker factors in regard to appellant's constitutional speedy trial claim, we conclude that the delay in trying appellant did not violate his constitutional speedy trial rights because it was not unduly lengthy, did not result from any intentional misconduct on the part of the Commonwealth, ended on the very day that appellant first asserted his constitutional speedy trial right, and resulted in no actual prejudice to appellant.

B.  MID-TRIAL CONTINUANCE

"[C]ontinuances in the midst of trial should not be an everyday occurrence. Nevertheless, such decisions are entrusted to the sound discretion of the trial court." Bennett v. Commonwealth, 236 Va. 448, 461, 374 S.E.2d 303, 311-12 (1988); see also Gray v. Commonwealth, 16 Va. App. 513, 517, 431 S.E.2d

86, 89 (1993) (motion for continuance in order to obtain missing witness is addressed to sound discretion of trial court). "In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to gather and make the evidence available at trial." Smith v. Commonwealth, 16 Va. App. 630, 636, 432 S.E.2d 2, 6 (1993). We also consider the materiality of the evidence. See Gray, 16 Va. App. at 518-19, 431 S.E.2d at 89-90. Where a party uses due diligence to secure the presence of a material witness at trial and the witness fails to appear, refusal to grant a continuance even after jeopardy has attached may be an abuse of discretion. See id. Generally, the granting of a continuance "will not be reversed on appeal absent an abuse of discretion and demonstrated prejudice to the complainant." Price v. Commonwealth, 24 Va. App. 785, 789, 485 S.E.2d 655, 656 (1997).

Here, the record shows that Merchant was a material witness and that the Commonwealth exercised due diligence to secure his presence at trial. Merchant was a material witness because the Commonwealth alleged that he was in the truck with appellant at the time of the incident in question and was the only person who could confirm that appellant was driving. Although Deputy Alder was able to describe the height and build of the driver and passenger who fled the vehicle, he did not see the face of either and could not affirmatively identify appellant as the driver. The Commonwealth exercised due diligence in procuring Merchant's

- 13 -

presence for trial and did all in its power to obtain truthful testimony from him.  However, Merchant appeared only after a capias was issued for him.  He refused to take the oath, attempted to invoke his Fifth Amendment right not to testify, refused to testify even after receiving a grant of immunity, and claimed he barely knew appellant and did not remember making a statement to Deputy Alder about the events of October 4, 1995. Through these actions, Merchant became unavailable to the Commonwealth.  Because Merchant was a material witness who was unavailable, the trial court did not abuse its discretion in continuing the case.  See Gray, 16 Va. App. at 518-19, 431 S.E.2d at 89-90.

Moreover, appellant has failed to demonstrate prejudice caused by the continuance.  In essence, appellant asserts that he was prejudiced because the continuance enabled the Commonwealth to persuade Merchant to change his testimony by having the trial judge hold him in contempt of court until he provided incriminating testimony against appellant.  If Merchant had provided substantive testimony at the January 15, 1997 proceedings, we might view the situation differently.  However, because Merchant's behavior reflected an ongoing resistance to providing any substantive testimony whatsoever, we reject this argument.

Appellant's argument erroneously presupposes that Merchant abided by his oath and provided truthful testimony on January 15,

1997.  The transcript of those proceedings belies this assertion. It contains four-and-one-half pages of dialogue between Merchant and the trial judge reflecting the difficulty the trial judge faced in getting Merchant to swear to tell the truth.  It also shows that after granting immunity to Merchant, the prosecutor tried to question him, but Merchant provided evasive, equivocal responses.  Finally, after hearing and observing Merchant, the trial judge ordered him to show cause why a previously suspended sentence should not be revoked "based entirely on your behavior here today.  Your attitude.  Your testimony.  Your total lack of regard for the oath that was given to you by the Court."  After hearing an additional prosecution witness, the trial judge granted a continuance based on "this display that I've seen by Mr. Merchant today."

Based on the materiality of Merchant's testimony and the Commonwealth's earnest, but unsuccessful, attempts to procure it, the trial judge did not abuse his discretion in granting the continuance.  Moreover, appellant, who was not held in custody during the continuance, has failed to demonstrate prejudice, either by showing that Merchant's January 15, 1997 behavior was in compliance with his oath or, as we discussed in rejecting his speedy trial claim, by showing that his defense was adversely affected by the continuance.  Accordingly, we hold that the trial court did not abuse its discretion in granting the continuance.

C.  SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

> The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide. However, whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law.

Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986).

Viewed in this light, the evidence proved that appellant drove his truck at excessive speeds and in a reckless manner after having been adjudged a habitual offender.

Deputy Alder testified that he pursued appellant's truck at high speeds in an effort to stop the driver. The incident occurred late at night on wet roads. The driver of the truck exceeded speeds of one hundred miles-per-hour and disregarded a traffic sign. Eventually, the truck drove off the road and stopped, and the two occupants fled on foot. Alder stated that the man who exited from the passenger side "was a tall, slender white male" and that "a short male got out of the driver's side." The driver and passenger were not apprehended at that time.

On April 28, 1997, Merchant testified that he was a passenger in appellant's truck on the night Alder pursued them

- 16 -

and that appellant was driving during the chase. Merchant confirmed that appellant was "going right fast" during the chase and that he exited the vehicle and fled after the truck stopped. Merchant stated that he was 6'1" tall and weighed 175 pounds. The Commonwealth asked the trial court to take judicial notice of the fact that appellant was "much shorter and much stockier" than Merchant. In finding appellant guilty, the trial court noted that Deputy Alder's testimony was "really undisputed" and that it was "clear to [the court] . . . that [Alder] saw [appellant] getting out of the driver seat."

The fact finder believed the Commonwealth's evidence, including Merchant's testimony of April 28, 1997, and rejected Merchant's January 15, 1997 statements that he barely knew appellant and did not remember what, if anything, he told Deputy Alder about the events of October 4, 1995. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of driving after having been declared a habitual offender and in such a manner as to endanger the life, limb or property of another in violation of Code § 46.2-357.

For these reasons, we hold that the trial court did not err in denying appellant's motion to dismiss on constitutional speedy trial grounds, granting the Commonwealth's motion for continuance, and convicting appellant of violating Code § 46.2-357. Therefore, we affirm appellant's conviction.

<u>Affirmed</u>.